THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TUMMERY MATTHEWS, Defendant-Appellant.

(No. 73-50; )

Third District—July 11, 1974.

Richard Steck, of the State Appellate Defender's Office, of Ottawa, for appellant.

Rafael Toruno, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Tummery Juan Matthews, was indicted for the armed robbery and murder of Lovell Lockhart. After a jury trial the defendant was found not guilty of armed robbery but guilty of murder. The Circuit Court of Will County sentenced him for a term of not less than 50 nor more than 100 years. Defendant appeals contending:

1. That the trial court erred in refusing to answer a question asked by the jury.
2. That the court erred in refusing a manslaughter instruction.
3. That the State failed to prove the defendant guilty of murder beyond a reasonable doubt.
4. That the court erred in admitting certain evidence.
5. That the sentence was excessive.

On February 6, 1972, a police officer stopped Tummery Matthews, the defendant, on Interstate 55. Because he had no driver's license, the officer arrested him. Matthews spent the night in the Will County jail, but his car was left on the shoulder of Interstate 55 where he had been stopped.

On February 7, 1972, defendant asked for and received a recognizance bond. Matthews went to a tavern to drink and to call his parents and his employer. He attempted to find a ride to his car but was only able to find a taxi driver who took him to a service station.

At the service station defendant met Lovell Lockhart, who agreed to take him to his car in the station's towtruck. After a stop at an auto parts store, the two men went to the car, arriving at roughly 6 o'clock.

The police found Lovell Lockhart dead of gunshot wounds at approximately 7:30 P.M. Lockhart's body was sitting in the towtruck at the point on the freeway where Matthews' car had been parked.

In the early morning hours of February 8, police arrested Matthews at his home in North Chicago, Illinois. Subsequently, the wallet of the deceased, the keys to the towtruck, a toolbox from the towtruck, an empty box for a handgun, and ammunition were found in his possession.

Shortly after his arrest, Matthews confessed to the killing and the police taped his confession. He stated that when he and Lockhart got to his car, the car was too cold to start until they sprayed a fluid on the engine. After starting the car they returned to the towtruck. Lockhart wanted $10 or $11, but Matthews had only $5. The two argued. Lockhart hollered and waved his hand in Matthews' face. Matthews feared that Lockhart would attack him and he lost control and shot and killed Lockhart.

At trial, defendant disavowed his confession stating that it was coerced. He testified that a second car and driver was parked in the vicinity of his car when he and Lockhart arrived there. He testified that Lockhart was alive when defendant left the area. He testified to the effect that

various items of evidence were planted and explained that he never owned the gun which belonged in the gun box found in his possession.

The jury commenced deliberation at 3:35 P.M. At 9:30 P.M. the bailiff brought the judge a written question from the jury asking, "Did the testimony show if a police car or any other vehicle parked directly behind the tow truck." The trial judge consulted with both prosecution and defense attorneys and then formulated his reply. He asked defense counsel if he had any objection to the answer to the jury. Defense counsel replied, "No Sir." The judge then gave a written reply to the jury, "I cannot answer your question. You must decide on the evidence you heard in court."

■■ Defendant on appeal argues that the question submitted here should have been interpreted by the trial court as a request for a review of testimony presented during trial. We do not agree. The question was a simple one asking the trial judge to *state his recollection* of testimony. At the time of trial defense counsel did not regard the question as a request for review of testimony and he did not allege or argue the point in his motion for a new trial. Since the issue has not been properly preserved, it is deemed waived. (*People v. Virgin,* 9 Ill.App.3d 902; *People v. Irwin,* 32 Ill.2d 441, 443.) Moreover, the disposition of a jury's request for a review of testimony is within the discretion of the trial court to allow or refuse the request for the review of testimony. (*People v. Pierce,* 56 Ill.2d 361, 308 N.E.2d 577.) An examination of the record and defendant's brief reveals no abuse of that discretion.

The defendant offered two voluntary manslaughter instructions and the court held there was no reasonable ground in the evidence for submission of voluntary manslaughter to the jury, and we agree.

■■ The defendant's claim to having acted while under an intense passion resulting from a serious provocation has no foundation at all. The testimony falls far short of the reasonable, adequate provocation required to reduce murder to manslaughter while in the heat of passion. The test is objective, not subjective. The inquiry is not as to whether this defendant was angry at someone or about something at the time he shot and killed the deceased. The question to be asked is whether there existed such provocation as would have caused the state of mind claimed in an ordinary person under the same circumstances. "A mere attempt of the deceased to strike defendant with his fist would not justify the latter in meeting the assault with a deadly weapon or reduce the grade of the homicide to manslaughter." (*People v. Pursley,* 302 Ill. 62, 73.) Here such adequate provocation is entirely absent, and the request for submission of a manslaughter verdict was properly denied. There is no evidence that defendant was threatened with imminent death or great bodily

harm, or the circumstances were such that he could reasonably believe that he was so threatened. The deceased brandished no weapon; neither in word or manner did he threaten the life or limb of the defendant. The words and actions of deceased were not the kind that would excite a sudden and intense passion in a reasonable person; they did not constitute the serious provocation required to reduce the killing to manslaughter.

Defendant has seized upon the words "mutual quarrel or combat" found in S.H.A., ch. 38, sec. 9—2, committee comments, emphasizing mutual quarrel. 4 Blackstone's Commentaries (7th ed.) 191 is one of the citations given. The text of the citation is "As to the first, or *voluntary* branch: if, upon a sudden quarrel, two persons fight, one of them kills the other, this is manslaughter: * * *."

■■ Passion on the part of the slayer, no matter how violent will not relieve him from liability for murder unless it is engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation is not sufficient the crime is murder. It is the general rule that language, however aggravated, abusive, opprobrious, or indecent, is not sufficient provocation to reduce a killing committed with a deadly weapon from murder to manslaughter. (*People v. Marrow*, 403 Ill. 69; *People v. McMurry*, 64 Ill.App.2d 248.) The rule does not apply where as a result of insulting or opprobrious words, the parties become suddenly heated, and engage in a mutual combat, *fighting on equal terms,* and death results from the combat. 40 Am.Jur.2d *Homicide* sec. 64.

The term mutual combat has been defined as one into which both parties enter willingly, or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms. 15 C.J.S. p. 358.

A slight provocation will not be adequate since the provocation must be proportionate to the manner in which the accused retaliated and therefore if accused on a slight provocation attacked deceased with violence out of all proportion to the provocation and killed him the crime is murder. This is especially true if the homicide was committed with a deadly weapon. See 40 C.J.S. *Homicide* sec. 46, p. 908; Wharton's Criminal Law and Procedure (1957), sec. 276.

■■ The next contention of defendant is that he was not proved guilty of murder beyond a reasonable doubt, citing *People v. Halley*, 13 Ill. App.3d 719. In that case the element of justifiable self defense was at issue, the question being whether the decedent or the defendant shot first. Both defendant and an eye-witness testified that decedent first shot at defendant without provocation. The case has no application here. It is further argued that the evidence in the instant case failed to prove intent. The defendant's own statement shows that he intentionally fired the gun. It is not necessary to show that he formed an intent to kill since

there can be no question but that the natural tendency of this act would be to destroy life. In a situation such as this the criminal intent to murder may be implied from the character of the act. (*People v. Gonzales*, 40 Ill.2d 233, 242.) As was stated in *People v. Kelley*, 29 Ill.2d 53, 59, "The jury is not required to disregard the inferences that flow normally from the evidence before it, (*People v. Brown*, 27 Ill.2d 23, 26) and neither the jury nor this court is required to conjure up hypotheses from the evidence that are inconsistent with the defendant's guilt, and elevate these potential explanations to the status of a reasonable doubt. (*People v. Russell*, 17 Ill.2d 328, 331.) Where the evidence is in part circumstantial a conclusion that the defendant is guilty beyond a reasonable doubt need not follow necessarily from the proven circumstances, but may be obtained therefrom by probable deduction. (*Gannon v. People*, 127 Ill. 507.)"

■■ We are of the opinion that there was sufficient evidence to support the jury's verdict.

Defendant has filed a pro se supplemental brief in which he contends that People's exhibit 5 was improperly admitted in evidence. In the instant case the decedent when on the way with defendant stopped at the Illinois Auto Parts Store and purchased a Victor Oil Seal from John Lindberg.

John Lindberg testified that he had sold a Victor Seal to the victim and that exhibit 5 resembled the container of the oil seal. He further testified that a discrepancy between the serial number on exhibit 5 (46418) and the number on a receipt (47418) was due to his clerical error.

Benton Covey, a State police officer testified that on the night of the crime he went to St. John's Hospital where he was met by Mr. Faith Percy who handed him exhibit 5 which had been found in the ambulance when decedent was taken to the hospital by Mr. Percy. The exhibit had a number written on it (VM 7689) which was the license number of defendant's automobile. The officer testified that upon receipt of the box he had marked the same and he identified his markings in Court.

Mr. Percy testified, "That doesn't look like the box to me, not that one" and further "I don't recall any blue on it like that, and the number was written on in pencil * * *."

■■ The failure of Mr. Percy to make a positive identification of the box would not preclude its admissibility. Measured by any reasonable standard the continuity of possession of People's exhibit 5 was sufficiently shown to entitle the exhibit to be admitted. A rule requiring not only that continuity of possession be established, but also that there be positive identification by everyone concerned, would impose an unnecessary

burden, while it would not assure a fair trial to the accused. *People v. Cain*, 35 Ill.2d 184, 188, *cert. denied*, 385 U.S. 1042.

■■ Defendant lastly contends that his sentence is excessive. The defendant had a prior conviction for voluntary manslaughter. The record shows that he had committed two homicides within a period of less than 4 years. The trial judge found that defendant had no redeeming features. "There are, unfortunately, in our society habitual offenders who are beyond the pale of redemptive treatment." (*Abernathy v. People*, 123 Ill. App.2d 263, 271.) The trial judge made a sound determination of the punishment to be imposed and we will not disturb it. The judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

SCOTT, P. J., and ALLOY, J., concur.