THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY PEOPLES, Defendant-Appellant.

Third District   No. 78-480

Opinion filed May 18, 1979.

Robert Agostinelli and Gary R. Garretson, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Leroy Peoples appeals from his conviction for burglary

in the Circuit Court of Kankakee County, following a jury trial. He was sentenced to a term of from 2 to 6 years imprisonment.

The trial court, pursuant to section 8—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1008—2—4(b)), informed the defendant, prior to sentencing, that he had a right to elect to be sentenced under the law in effect at the time of his sentencing (being the new determinate sentencing in effect after February 1, 1978). After defendant had been informed of the essential differences between the two sentencing schemes, defendant chose to be sentenced under the old sentencing law in effect at the time of his offense. In accordance with this election, as we have noted, the court sentenced him to a term of from 2 to 6 years in prison.

Defendant now appeals that sentence and challenges the sufficiency of the election given him by the trial court on "due process" and "equal protection" grounds. He argues that it is constitutionally required that defendants eligible to elect between the old and the new sentencing provisions be informed not only of the differences between the two laws, but also of the specific intended sentences which would be imposed under each sentencing scheme. It is argued that such information, of the precise sentence which would be imposed, is necessary in order for a defendant to make an informed and meaningful election.

Section 8—2—4(b) of the Unified Code of Corrections states:

"(b) Prosecution for any violation of law occurring before the effective date of this amendatory Act of 1977 is not affected or abated by this amendatory Act of 1977. If the defendant has not been sentenced before the effective date of this amendatory Act of 1977 [being February 1, 1978], he shall have the right to elect to be sentenced under the law as it existed at the time of his offense or under the law in effect on and after the effective date of this amendatory Act of 1977. If a sentence has been imposed before the effective date of this amendatory Act of 1977, the defendant shall not have the right of election even though his case has not been finally adjudicated on appeal; however, where eligible, he shall have the rights provided by Section 3—3—2.1 of this Code." Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b).

Defendant's due process contentions are twofold. It is contended that the election provided for in section 8—2—4(b) is constitutionally required (citing *People v. Hollins* (1972), 51 Ill. 2d 68, 280 N.E.2d 710, and *People v. Bedford* (1st Dist. 1977), 53 Ill. App. 3d 1005, 369 N.E.2d 84). From this premise, defendant argues that in order for the constitutionally required election to be meaningful, and for any choice to be "informed," that a defendant must be advised of the specific sentences that the court would impose under each sentencing scheme.

■■ The difficulties with this argument are manifest. The principal difficulty is that the premise is faulty since the origin of the election provided in section 8—2—4(b) is statutory and not constitutional. There is no constitutional requirement that the election be given to the defendants. As recently stated by the Illinois Supreme Court in *People v. Grant* (1978), 71 Ill. 2d 551, 561, 377 N.E.2d 4, where the court discusses a constitutional challenge to this section:

"* * * the ability to elect to be sentenced under a law enacted after the date of the commission of a crime is not a constitutional right but a benefit conferred solely by statute. It is not unconstitutional for the legislature to confer such benefit only prospectively, neither is it unconstitutional for the legislature to specify 'a classification between groups differently situated, so long as a reasonable basis for the distinction exists.' [Citation.]"

In the case relied upon by the defendant, *People v. Hollins* (1972), 51 Ill. 2d 68, 280 N.E.2d 710, the defendant was denied his right to make an election between differing sentencing schemes. The supreme court emphasizing the great discrepancy in possible sentences for the defendant under the two schemes, concluded that the court's failure to inform the defendant of his right to elect constituted a violation of due process. (51 Ill. 2d 68, 71.) However, in *People v. Gonzalez* (1974), 56 Ill. 2d 453, 308 N.E.2d 587, the Illinois Supreme Court indicated that *Hollins* should be limited to its facts and that a failure to advise a defendant of a right to make a sentencing election did not automatically constitute a constitutional violation. Neither case dealt with section 8—2—4(b), the section at issue before us, although the *Gonzalez* holding signaled the determination actually made in *People v. Grant*, from which we have quoted. As to section 8—2—4(b), the decision in *People v. Grant*, that the election therein provided is statutory and not constitutionally required, is dispositive of the question raised by the defendant. The cases cited by the defendant concerning the requirements for a waiver of constitutional rights are, accordingly, not applicable to the issue of what is necessary under the statute.

■■ Since it is obvious that the election provided is statutory, we must look to the language of the statute to determine what is required. The statute determines what a defendant has a right to be informed of, prior to making the election. In examining the pertinent language of the statute, which has been set out previously, we find no indication that the legislature intended a defendant to be given a choice between specific sentences which would be imposed under each sentencing law. Section 8—2—4(b) gives the defendant the right to elect "to be sentenced under the law as it existed at the time of his offense or under the law in effect" after the effective date of the amendatory act of 1977. This section gives

defendants the right to elect under which law they wish to be sentenced, not the right to elect which sentence a defendant would wish to be imposed. The election given is clearly between sentencing schemes and not sentences. The legislature contemplated sentencing by the court after an election by a defendant of which law should be applied. The practical effect of the construction contended by the defendant would be that the court would be required to set sentences before the election, and the defendant would then choose which sentence he preferred. We find no support for the defense position that the statute requires a defendant be given a choice between specific sentences. On this issue, in *People v. Dozier* (4th Dist. 1979), 67 Ill. App. 3d 611, 385 N.E.2d 155, 158, the appellate court, after reciting that although the section gives the defendant the right to elect to be sentenced, under either law as it existed at the time of his offense or the law in effect at the time of sentencing, stated:

"* * * there is no requirement—statutory, decisional, or by rule—that the election be knowing and intelligent, nor that such election constitutes a waiver of a constitutional right, nor that the sentencing judge must explain the variances between the alternative acts, nor that the trial court admonish him as to what will or might be his best or most advantageous choice, nor that the trial judge must tell him in advance of election what the sentence *will* be under each act."

In the instant case, defendant Peoples was informed of his right to elect under which law he would be sentenced, and he was also informed of the differences and consequences which would flow from an election under either sentencing law. His election, therefore, so far as the court needed to provide, was a knowing and informed one. While the question of whether the court was required to explain the differences between the laws to this defendant is not before us, since the explanation was given, we do note the advisability of that practice, since failure to do so by both trial counsel, who has the primary obligation, and the court, might render any election by such defendant subject to subsequent challenge. We believe that the legislature contemplated that the election would be made by the defendant informed of the differences between the two laws. We believe that this would make the right to make the selection meaningful. In the instant case we conclude that the action by the trial court fully complied with the statute and that there was no due process violation in failing to inform the defendant of specific sentences that the court intended to impose under each law.

The second challenge which defendant makes to section 8—2—4(b) is that it violates the equal protection rights of a defendant in the position of the instant defendant. In support of this argument, defendant points to

section 3—3—2.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—3—2.1) which gives to inmates incarcerated in the Department of Corrections as of February 1, 1978 (*i.e.*, those already serving sentences imposed under the old law), the right to choose between parole eligibility under their previously imposed sentences and a fixed release date reduced by good time credit, as set by the Prisoner Review Board. The defense argues that those persons convicted and incarcerated as of February 1, 1978, and those persons convicted but not yet sentenced as of February 1, 1978, are similarly situated. The defense contends that there is no rational basis for distinguishing in the sentencing laws between these two classes of similarly situated persons. Defendant contends that the legislation giving the former class a specific release date, while giving the latter an election of which sentencing law the defendant might wish to be sentenced under, discriminates unconstitutionally against the latter class of persons. In essence, the defendant argues that, since those incarcerated as of February 1, 1978, get a specific release date, then equal protection requires that those sentenced and about to be incarcerated after February 1, 1978, ought to get specific alternative sentences under each law from which to choose.

■ This argument is not sound. The argument ignores the fact that a defendant who has the election between laws can get a specific release date set for him simply by electing to be sentenced under the new determinate sentencing law. Thus, in a very real sense, both classes of persons are given essentially the same choice, sentences under the old law or sentences under the new law. Additionally, in *People v. Grant* (1978), 71 Ill. 2d 551, 561, 377, N.E.2d 4, the Illinois Supreme Court noted that the classification "between groups differently situated" is acceptable constitutionally "so long as a reasonable basis for the distinction exists." We find that the two classes of persons identified by the defense as similarly situated are differently situated so far as applying the sentencing laws is concerned. Persons convicted and incarcerated as of February 1, 1978, who are to be given a release date by the Prisoner Review Board are differently situated in that, unlike those in the defendant-Peoples category, the persons convicted and incarcerated as of February 1, 1978, have already been sentenced to a term of incarceration under the law in effect prior to February 1, 1978, and they are incarcerated and under the authority and supervision of the Department of Corrections. As noted, given these differences in situation, the two classes of persons are treated essentially the same. The practical effect of section 3—3—2.1 for those already incarcerated is the same as that of section 8—2—4(b) for those not yet sentenced. It gives the group the opportunity to choose between a determinate sentence, as envisioned under the new sentencing scheme, and their old indeterminate sentence and parole options under the old act.

The legislature apparently determined that they too were to be given the essential benefit of the new determinate sentencing law which came into effect on February 1, 1978. The legislature may have concluded that having a more determinate release date than that available under the parole system would have a beneficial effect on prison discipline and effective rehabilitation.

It is true that while the essential benefit of the new law is thus offered to those already sentenced and incarcerated, the choice given to them is slightly different than that given to those facing sentencing after February 1, 1978. The latter group may elect which law they wish to be sentenced under, while those in the former group are given a choice between their existing sentences with parole possibilities and a specific release date set by the Board. This difference in the detail of the option afforded the two groups is a reasonable distinction, given the differences in situation, as we have noted. Those already incarcerated as of February 1, 1978, have been sentenced under the old law to a definite, although indeterminate number of years. As such, they know in a concrete specific way their earliest possible date for parole. Given this knowledge on the part of such persons, the legislature may have determined it necessary, in order to insure a meaningful choice to encourage those persons to choose a specific date, to give them an equally specific date for release under the amendatory act if they desire to have such specific date. To have given them a choice between their existing sentences and a vague, general future resentence under the new law would have been to offer them a choice between essentially different alternatives, and it would have required resentencing by those courts which had imposed their original sentence, since the Department of Corrections and the Board cannot set sentences.

■■ Those convicted but not yet sentenced as of February 1, 1978, have no specific knowledge concerning an earliest possible release date under the old law. Some don't even know if they will be incarcerated at all. Thus, a meaningful choice as to sentencing can be made without having a specific date set under each law. A defendant can weigh whether he wants an indeterminate sentence and uncertain release possibilities, under the law and its parole provisions, or whether he wants a determinate sentence under the new law, with its specific release date and good time credit. In addition, since such defendant is still facing sentencing by the court, no added burden is required in order to set sentence under either law. Broadly speaking, therefore, we conclude that the two groups of persons are treated essentially the same under the provisions at issue in this case. With respect to the differences in the detail of the options given to each group, the difference in situations between the two groups forms a reasonable basis for distinguishing between them in the minor manner as

provided in sections 3—3—2.1 and 8—2—4(b) of the Unified Code of Corrections to which we have referred. While the legislature could have provided that those not sentenced as of February 1, 1978, would be able to select between specific sentences under each new law, the failure of the legislature to do so does not constitute the denial of due process or equal protection to those persons.

We have discussed the issue with respect to the equal protection considerations without seeking support under section 3—3—2.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1003—3—2.1), which gives to "prisoners" incarcerated in the Department of Corrections as of February 1, 1978, who have already been sentenced, the right to choose between parole eligibility under their previously imposed sentences or to a fixed release date (reduced by good time credit) as set by the Prisoner Review Board. The provisions of section 3—3—2.1 of the Unified Code of Corrections state:

"* * * the Prisoner Review Board shall, no later than 7 days following a prisoner's next parole hearing after the effective date of this amendatory Act of 1977 (Feb. 1, 1978), provide each prisoner *sentenced under the law in effect prior to the effective date of this amendatory Act of 1977, with a fixed release date.*" (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—3—2.1.)

It may very well be that this provision would be construed to afford, to persons who have elected to be sentenced under the old act, even though sentenced after February 1, 1978, the opportunity to obtain a fixed release date under the provisions of section 3—3—2.1 of the Unified Code of Corrections. It is obvious that if this is the ultimate construction given to such provision, there is even less lack of "equal protection" under the provisions of the Unified Code of Corrections referred to in this opinion. It is, therefore, apparent that there is no denial of due process or equal protection to the person situated, as is defendant, who has elected to be sentenced under the sentencing law in effect at the time of his offense. In any event, regardless of the ultimate construction of section 3—3—2.1 of the Unified Code of Corrections, we find no lack of due process or equal protection in the legislation under consideration.

For the reasons stated, therefore, the judgment of the Circuit Court of Kankakee County and the sentences imposed are affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.