THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM WILFONG, Defendant-Appellant.

Third District   No. 78-183

Opinion filed May 31, 1979.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant William Wilfong appeals from a conviction of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) in a jury trial in the Will County Circuit Court and from a consequent sentence of 6 2/3 to 20 years in the penitentiary.

On appeal, defendant contends (1) that there was insufficient evidence in the record to justify the jury finding him guilty of burglary since he lacked the intent to commit a theft in the victim's home; (2) that defendant was denied his constitutional rights to equal protection and due process of law and his statutory right to an election of sentences on the contention that the trial court did not inform the defendant, before sentencing, as to exactly what his sentence would be under the new act as well as under the old act from which he was to make an election; and, (3) that defendant was denied his statutory right to a proper sentencing hearing for the reason that the trial judge failed to specify in the record the reasons for the sentence imposed.

Defendant was charged with burglary by information under sections 19—1(a) and 16—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 19—1(a) and 16—1(a)(3)). The burglary count charged defendant with knowingly and without authority entering a Rockdale home on May 30, 1977, with the intent to commit therein a theft. A theft count, on which the jury found defendant not guilty, charged defendant with stealing Mary Williams' Chevrolet at the premises. Mary Williams and her son, Harry Thomas Williams, lived in the house with an unattached garage in Rockdale, Illinois. From May 22 to June 3, 1977, they were both in California and Mary Williams left her Chevrolet Caprice in the locked garage and left the car keys in a dresser drawer in her bedroom. The keys were on a ring which also contained a key to the house and a "little round thing" on which the Lord's prayer was printed. Mary Williams also left a packed green suitcase in her living room.

Prior to their California trip, Mary asked a friend to watch and check

her house and gave that friend a key. That friend checked the house at 8 a.m. on May 30, 1977, and found everything in order and found the Chevrolet in the garage. He locked both the house and the garage before leaving.

When the friend who was to watch the house, returned to the house at 4 p.m. on the same day, accompanied by a companion, they noticed that the garage door was open and saw the Chevrolet inside it. The friend of Mary Williams also noticed that the padlock to the garage was gone and that a basement window was broken. As the friend was about to open the front door to the house with his key, defendant Wilfong came to the door and said, "Nobody is going in and nobody is going out." Defendant had the key ring with the Lord's prayer on it in his hand. The friend and his companion talked to the defendant Wilfong at the front door for almost 10 minutes. Defendant then stated that Mary Williams had, earlier that day, hired him to look after the house.

A neighbor who lives east of the Williams house saw the two friends of Williams talking to someone and saw the two men leave. The neighbor walked over to the Williams house thereafter and as she approached the house, a man came to the door. From a 40-foot distance the neighbor asked if Mary Williams was home and the response was "no." Because the man's back was to the neighbor she did not see the face of the man but saw the color of his hair and the clothes he was wearing. Approximately 45 minutes later the neighbor saw the Williams car being driven from the house down the street.

When the friend who had been requested to watch the house returned to his home, he received a call from Mary Williams. After she heard what her friend had just seen, she told the man to take the police to her house. The friend of Mary Williams returned after talking with the police officer and found the window in the door from the basement to have been broken and that some drawers in the bedroom were open and a frying pan, plate and silverware were piled in the kitchen as if someone had eaten a meal. Only the Ford automobile remained in the garage.

When Mary Williams returned to the home on June 3, she found that the suitcase that she had left in the living room was in her bedroom. The car keys were gone from her dresser drawer. The Chevrolet was found abandoned on Interstate 80 on May 31. The automobile keys were not in the car. Harry Williams found defendant's eyeglasses in the glove compartment of the Chevrolet and he recognized these as belonging to defendant, since he had helped defendant put rubber bands on them. The glasses had not been in the compartment before Williams went west on the trip. The brakes on the Chevrolet were burned out and the front end of the Chevrolet was out of alignment resulting in $500 in payments from the insurance company. There was no outward damage to the automobile.

Mary Williams and Harry Williams knew defendant prior to May 30, 1977. Defendant had been to the Williams house quite a few times to wash windows and repair cracked floors. Defendant had also used the Williams Chevrolet on two occasions prior to May 30. Mary Williams had last seen defendant four or five months prior to May 30, and Harry Williams had last seen him seven or eight months before that date. Mary Williams testified that the defendant did not have permission to use the car or to check the house, car or garage while the Williamses were in California. The post-trial motion following the trial was denied.

For the reason that defendant was convicted of committing an offense before February 1, 1978, but was not sentenced until after that date, he had a right to elect whether he desired to be sentenced under the old or new sentencing acts, under the provisions of section 8—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b)). During the sentencing hearing, the judge discussed the new sentencing act in the light of defendant's prior record. He stated the range of potential determinate sentences defendant could receive under the new act. Defendant's attorney stated that defendant wished to proceed under the old act.

The judge then began to question the defendant about his understanding of the election or choice which he had as to sentences. The judge explained the possible indeterminate sentences defendant could receive under the old act, but defendant stated he did not want to hear further explanation of the election. As a result, the judge queried defense counsel, who said that he had conferred with his client and that the client had elected to be sentenced under the old act. Counsel also stated that defendant indicated that he was aware of the differences between the old and the new sentencing act. The sentence was imposed under the old act.

The first issue raised by defendant is the contention that the State failed to present sufficient evidence to prove beyond a reasonable doubt that defendant intended to commit a theft in the Williams house at the time he broke into and entered the house. In the instant case, the defendant unlawfully broke and entered into a building which contained personal property which could be the subject of a larceny. The Supreme Court of Illinois held in *People v. Johnson* (1963), 28 Ill. 2d 441, 443, 192 N.E.2d 864, 866, that:

> "* * * in the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary."

Defendant concedes that this is the rule, but argues that inconsistent circumstances are present in this case which do not allow us to accept the inference that would sustain the burglary conviction.

Defendant's theory of the case is that the evidence showed only that defendant entered the house unlawfully for the purpose of borrowing the Williams automobile. Defendant asserts that the only item the State proved that he stole was the car keys. Defendant had actually been found not guilty of the theft of the automobile by the same jury which convicted him of burglary. Defendant argues that the keys were involved with the car and defendant's failure to leave the keys in the abandoned automobile was due to inadvertence rather than an intention to deprive the owner of them because the keys, without the car, were of little use to defendant. We note that the keys also had attached to them a house key.

■■ Basically, it is not essential to prove that anything was stolen, for the reason that the crime of burglary is complete upon an illegal entry into the building with intent to steal. *People v. Cokley* (1st Dist. 1977), 45 Ill. App. 3d 888, 360 N.E.2d 545, 547.

The defendant cites *People v. Perry* (1st Dist. 1971), 133 Ill. App. 2d 230, 272 N.E.2d 766, where defendant was discovered at the door of a complainant's bedroom at approximately 2 a.m. and was convicted of burglary. The evidence showed that defendant knew the complaining party in that case and had previously been invited to visit her late at night. Defendant in that case testified that he went to the apartment to visit the complaining witness. In reversing the conviction in that case, the appellate court held that the evidence raised an inference which was inconsistent with intent to commit a theft. Using that case as a basis, defendant in the instant case argues that because he had previously visited the Williams residence, it could not be inferred that he entered the home on May 30 with intention to commit therein a theft. Defendant's visits, however, were not social visits, as they were in the *Perry* case. Defendant's previous visits to the Williams home were to wash windows and to repair cracked floors. Also, defendant did not testify that he went to the Williams home on May 30 to visit one of the Williamses.

Although the jury might have inferred from the evidence that defendant only intended to borrow the Williams car, there was sufficient evidence from which the jury could infer that the defendant intended to commit a theft when he entered the house. The jury was able to observe the witnesses and parties involved giving testimony in the case and is in a much better position to make a determination as to whether the inference of an intent to commit a theft was proper.

■■ Defendant was seen in the house at 4 p.m. and did not drive away until after 5 p.m. Defendant knew, during this time, that he was observed in the area of the house. The jury may have inferred that defendant's rifling through Mary Williams' dresser drawer (which was noted in the trial) indicated that defendant thereby intended to steal some item or items. It is obvious that defendant was looking for something, but

apparently he found nothing of value. On the basis of the record, the jury was justified in concluding that defendant, who broke into the house unlawfully, intended to steal something in the home, even though he did not complete such theft, other than the theft of the keys.

■ Defendant's next contention on appeal is that he was denied due process and equal protection of the law and, also, his statutory right of an election to be sentenced, where the trial court did not permit him to make a meaningful choice between the old and new sentences by failing to specify the sentences which would be specifically given to him under the old act and the new act, with respect to sentencing. He insists that the trial court violated his rights by failing to inform him exactly what his sentence would be under the new act. We believe it is clear that defendant waived whatever rights he may have had to be informed of the consequences of the election since the court sought to explain to defendant the maximum sentences he could receive under the old and new acts, and the court asked defendant if he understood that. Defendant replied: "With due respect, what you give me or do not give me is immaterial. You can explain it on the record if you wish to do so, and I will sit here and use up some more of the court's valuable time. In other words, I don't want to hear it."

Defendant's counsel likewise told the court that the counsel had explained the differences between the two acts to defendant and that defendant had informed the defense counsel that he was aware of the differences. Defendant's counsel also informed the court that defendant had elected to be sentenced under the old act. Even if defendant did not waive his right to be informed further as to the respective acts, and the sentences which could be imposed, we find no violation of due process or equal protection of the laws in procedures in this case.

Defendant also contends that under section 3—3—2.1, of the new sentencing act (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—3—2.1), inmates in the Department of Corrections as of February 1, 1978, are given the choice of remaining under their indeterminate sentences with parole provisions, or accepting a fixed release date set by the Prisoner Review Board, with the opportunity to earn a day-for-day good time under the act. Defendant contends that the persons sentenced before February 1, 1978, are being treated differently from persons sentenced after February 1, 1978, who had elected to be sentenced under the old law. Those sentenced prior to February 1, 1978, would be given a specific release date or they could choose between either adhering to the indeterminate sentence or proceeding with the specific release date (in other words, to be released not later than the date specified, with possible earlier release day for every day of good conduct served). Section 3—3—2.1 states that the "Prisoner Review Board shall, no later than seven days

following a prisoner's next parole hearing after the effective date of this Amendatory Act of 1977 (February 1, 1978), provide each prisoner sentenced under the law in effect prior to the effective date of this Amendatory Act of 1977, with a fixed release date."

It is clear that defendant elected to be sentenced under the law in effect prior to February 1, 1978. We have recently determined this issue in the case of *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554. In that case, we analyzed the issues involved when a defendant has an election of being sentenced either under the old act in effect prior to February 1, 1978, or the new act in force and effect after February 1, 1978. We there determined that there is no basis for due process or equal protection arguments and that the statutory provisions with respect to sentencing are valid. We determined in that case that the alternative opportunity for a defendant to elect whether to be sentenced under the old act or the new act did not require that the trial court advise the defendant specifically of the sentence which would be imposed in both cases.

We also determined that there is no substance to the due process and equal protection arguments with respect to the alternatives and the provisions of the Illinois Criminal Code applicable when a defendant is to be sentenced for a crime committed prior to February 1, 1978, but where sentencing is not made until after February 1, 1978. We, also, determined in the *Peoples* case that the statutory provisions specified in the Act are reasonable and involve no violations of a defendant's constitutional rights on either due process or equal protection of the laws contentions.

We also pointed out in that case that if the provisions of section 3—3—2.1 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—3—2.1) may be interpreted to provide that any prisoner sentenced under the provisions of the old act, whether sentenced before or after February 1, 1978, is entitled to have the Prisoner Review Board, not later than seven days following the next parole hearing, after the effective date of the amendatory act of 1977 (February 1, 1978), it provides a defendant (sentenced under the law in effect prior to the effective date of the amendatory act) with a fixed release date. Our conclusion in that case was that whether or not the amendatory act referred to, providing for a fixed prisoner release date, is made applicable to defendants sentenced after February 1, 1978, under the old act, there would still be no violation of equal protection or due process rights with respect to a defendant so sentenced. We believe that section 3—3—2.1 (consistently with the apparent statutory objective of overall determinate sentencing) is expressly applicable to all persons sentenced under the old act, including those sentenced after February 1, 1978.

■ A final argument which is made by the defendant contends that the trial judge failed to comply with the requirements of the new sentencing act in that he did not specify on the record the reason for his sentence determination. The record discloses that the judge considered the matters he had heard at trial, accepted the presentence investigation, and noted that defendant had spent 27 of his last 31 years in prison. The court also stated that having regard to the nature and circumstances of the offense, and the history, character, and condition of the defendant, imprisonment was necessary for public protection. He also added that defendant was in need of correctional treatment which could be most effectively provided by imprisonment. He stated that probation or conditional discharge would deprecate the seriousness of his conduct and be inconsistent with the ends of justice. The court rejected probation as a sentencing alternative. Defendant's contention is apparently based upon the provisions of section 5—4—1(d) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—4—1(d)), where it is provided that in imposing a sentence for a felony, the trial judge shall specify on record the particular evidence, information, factors or other reasons that led to his sentencing determination. We believe that the trial court adequately reviewed the sentencing problems. We also note, specifically, that defendant had elected to be sentenced under the old act. The old act contained no requirement that the trial court explicitly state the reasons for the sentence imposed. (*People v. Partee* (3d Dist. 1975), 29 Ill. App. 3d 423, 331 N.E.2d 111, 113.) Even if the requirements of the new act were applied, it is clear that the trial court listed the factors sufficiently to satisfy that standard.

For the reasons stated, therefore, the judgment and sentence of the Circuit Court of Will County in the instant case are affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.