THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EARL STRANGE, Defendant-Appellant.

Third District   No. 78-353

Opinion filed February 11, 1980.

Walter D. Braud, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellant.

Fred R. Odendahl, State's Attorney, of Monmouth (William M. Wippold, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

At approximately noon on July 5, 1977, defendant, Robert Strange, entered the Kroger Grocery Store in Monmouth, Illinois, where his ex-wife worked and, in the presence of a number of witnesses, shot her to death with a .22-caliber pistol as she attempted to flee from him. Pretrial hearings were held on defendant's competency to stand trial and on his motion for change of venue. Defendant was found competent and the change of venue was denied. At trial defendant sought to raise the defenses of intoxication and insanity and requested a jury instruction on voluntary manslaughter. An intoxication instruction was given, but insanity and voluntary manslaughter instructions were rejected. The jury returned a verdict finding defendant guilty of murder, and after a sentencing hearing, the Circuit Court of Warren County sentenced defendant to a term of 75 to 150 years in prison. Defendant appeals.

Defendant raises numerous claims of error which he contends contributed to a denial of his right to an impartial jury. First defendant claims the trial court erred in denying his motion for a change of venue. During a week-long pretrial hearing on the motion, defendant presented testimony from local newspaper editors who detailed their coverage of the murder and of the hunt for defendant who evaded police for several days after committing the crime. Defendant also presented the results of a survey he had made of the potential juror community. The survey indicated that virtually everyone in the community had heard or read of the case and that more than half of those interviewed had formed an opinion as to defendant's guilt. The State countered with 48 affidavits from county residents who said they had not formed an opinion on the case. At *voir dire* the great majority of veniremen said they knew of the

case, and many were excused when they said they could not impartially evaluate the evidence and make a decision on it. All of the jurors selected said they could put aside what they had read or heard about the case and could make an impartial determination based solely on the evidence presented in court.

On appeal, defendant notes the relatively unpopulous nature of the Warren County community, the extensive press coverage of the case, the fact that most potential jurors knew of the case before trial, and the fact that many jurors were excused for cause. Defendant argues that, despite their contrary averments, the jurors actually selected must have been prejudiced against defendant by the pretrial publicity surrounding the case.

■■ "The basic consideration, however, is not the amount of publicity in a particular case, but whether the defendant in that case received a fair and impartial trial * * *." (*People v. Speck* (1968), 41 Ill. 2d 177, 183, 242 N.E.2d 208, 212.) In *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639, the Supreme Court held that a juror need not be totally ignorant of the facts and issues involved in the case before him. It is sufficient if the juror can lay aside the impression or opinion he has of the case as a result of pretrial publicity, and render a verdict based on the evidence presented in court. (*Irvin; Speck.*) Section 14 of "An Act Concerning Jurors * * *" (Ill. Rev. Stat. 1977, ch. 78, par. 14) provides:

> "It shall not be a cause of challenge that a juror has read in the newspapers an account of the commission of the crime with which the prisoner is charged, if such juror shall state on oath that he believes he can render an impartial verdict according to the law and the evidence. In the trial of any criminal cause, the fact that a person called as a juror has formed an opinion or impression, based upon rumor or upon newspaper statement (about the truth of which he has expressed no opinion,) shall not disqualify him to serve as a juror in such case, if he shall upon oath state that he believes he can fairly and impartially render a verdict therein, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement."

The determination of the impartiality of potential jurors rests within the sound discretion of the trial court. *People v. Johnson* (1976), 43 Ill. App. 3d 649, 357 N.E.2d 151.

All of the jurors actually selected in this case stated they could render a fair and impartial verdict in accordance with the evidence presented in court. The trial court was satisfied with the truth of the jurors' statements, and we find no reason to differ with that judgment. The fact many potential jurors were excused for cause does not indicate that the jurors actually selected were prejudiced, but merely demonstrates the care

which the court exercised in assuring defendant a fair and impartial jury. *Speck; People v. Berry* (1967), 37 Ill. 2d 329, 226 N.E.2d 591.

■■ Although the murder was widely publicized, most of the publicity consisted of routine factual accounts which were published many months before the trial began. (See *Berry; People v. Driver* (1978), 60 Ill. App. 3d 381, 376 N.E.2d 803.) Moreover, defendant in the instant case admitted shooting his ex-wife, and the only issue at trial was whether he possessed the requisite mental state at the time of the crime. The effect of pretrial publicity on the jury's determination of such an issue may well be minimal. We believe defendant was tried by a fair and impartial jury and that the trial court did not abuse its discretion in denying a change of venue.

Defendant next contends he was denied his right to an impartial jury by the improper conduct of the trial court during the *voir dire* examination. Defendant claims the trial court improperly propounded leading and suggestive questions to the veniremen, that it improperly restricted defense counsel's questioning of the veniremen, that it improperly admonished defense counsel in the presence of the jury, and that it improperly advised the jury that defendant would not receive the death penalty.

We have considered the entire record of the trial court's *voir dire* examination, and we find no impropriety. The record indicates the trial court properly questioned the potential jurors to determine if each one would be able to reach a fair and impartial verdict on the evidence. The trial court did not improperly restrict defense counsel's examination of the jurors, nor did it improperly admonish defense counsel in the presence of the jury. Furthermore, it was not error for the trial court to correct a juror's misimpression concerning imposition of the death penalty. *People v. Dewey* (1969), 42 Ill. 2d 148, 246 N.E.2d 232; *People v. Lykins* (1978), 65 Ill. App. 3d 808, 382 N.E.2d 1242, *aff'd* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182.

Defendant also contends the trial court erred in denying his motion for a mistrial based on juror prejudice. Near the end of the trial defendant moved for a mistrial on the grounds that one of the jurors had previously expressed a strong dislike of defendant. During an in-chambers examination by the trial court, the juror denied making any statements about the defendant or being prejudiced against him. Nevertheless, the State moved to discharge the juror, arguing that the juror might be disturbed by the accusation against her and as a result might be prejudiced against the State. The juror was allowed to return to the jury room, but was subsequently removed from the jury and did not take part in its deliberations, although this fact was disregarded in defendant's lengthy brief.

We do not believe the court erred in denying defendant's motion for a mistrial, particularly in light of the juror's subsequent discharge from the jury. The juror denied having any prejudice against defendant, and there is nothing to indicate she discussed the accusation against her or her reaction to it with any of the other jurors. As the State's request to discharge the juror indicates, there is serious question as to whether the juror's reaction to the accusation against her would have been of detriment to the State or the defendant or of no consequence at all. We believe the trial court properly excused the juror prior to the jury's deliberations and properly denied defendant's motion for mistrial.

Defendant's second major contention on appeal is that he was denied his right to defend and to cross-examine witnesses by the improper restrictions placed by the trial court on the scope of his direct and cross-examinations. Defendant refers to at least 20 instances of allegedly improper rulings by the trial court, and urges us to consider the entire record, which defendant claims to be replete with instances where legitimate examination was restricted by the trial court.

We have carefully considered the record in this case, and we find no error or combination of errors requiring reversal of defendant's conviction. Although a defendant has a right to defend and to cross-examine the witnesses against him, his examination of witnesses must at all times be bounded by the rules of relevancy and proper form. In the instant case the trial court properly sustained objections to defendant's questions which were argumentative or repetitious. The trial court required defendant to lay a proper foundation for his questions, and forbid him to assume facts not in evidence in his questions. As discussed more fully below, in the voluntary manslaughter issue, the trial court properly refused to allow defendant to elicit testimony on an issue which was irrelevant to the case.

> "The general rule is that the latitude to be allowed in cross-examination of witnesses rests in the discretion of the trial court. This court long ago stated that in the absence of a clear abuse of that discretion, a reviewing court will not find reversible error where cross-examination might have been unduly restricted unless there was a clear abuse of this discretion, resulting in manifest prejudice." (*People v. Hubbard* (1973), 55 Ill. 2d 142, 150-51, 302 N.E.2d 609, 613.)

We do not believe the trial court abused its discretion in this case, nor do we believe defendant was prejudiced by the court's rulings.

Defendant next contends the trial court erred in not allowing him to call at trial a psychologist or psychiatrist to testify as to defendant's sanity at the time of the crime. At the pretrial hearing in which defendant was found competent to stand trial, the State presented testimony from a

psychiatrist, and the defense introduced the reports of a psychologist who had tested defendant. Prior to trial defendant notified the State of his intent to raise an insanity defense, but he did not include the name of a psychiatrist in his list of potential trial witnesses.

■■ After the two-week long trial was half over, and one month after the competency hearing, defendant moved for appointment of a State-paid psychiatrist. Defendant was being represented by the same retained counsel who continues to represent him on this appeal, and the trial court properly denied the motion. Defendant then asked that he be allowed to call a psychologist to testify and to render an expert opinion. This motion was also properly denied. This court has previously said:

"As we interpret the cases it is apparent that only a qualified psychiatrist, not a psychologist, could give an opinion as to the sanity of a defendant. (See *People v. Noble*, 42 Ill. 2d 425, 248 N.E.2d 96.) In the instant case the testimony of the psychologist as to what tests were performed, and the results thereof, was irrelevant unless it formed the basis for an opinion by a qualified psychiatrist of the mental ability of the defendant. Since it did not form such a basis the testimony was properly excluded." *People v. Gilliam* (1974), 16 Ill. App. 3d 659, 663-64, 306 N.E.2d 352, 356.

Defendant then asked to be allowed to call a psychiatrist to testify at defendant's expense. The State objected, noting that a psychiatrist had not been listed in defendant's list of trial witnesses. The State argued that the trial would be delayed and the State's case prejudiced if defendant's untimely motion was granted. On appeal, defendant claims it was error for the trial court to deny him the right to call the psychiatrist. We do not agree.

■■ Supreme Court Rule 413(d) provides:

"Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial and shall furnish the State with the following material and information within his possession or control:

(i) The names and last known addresses of persons he intends to call as witnesses * * *."

(Ill. Rev. Stat. 1977, ch. 110A, par. 413(d).)

When a witness has not been listed as required by Rule 413, it is within the trial court's discretion to exclude the witness' testimony. Ill. Rev. Stat. 1977, ch. 110A, par. 415(g)(i); *People v. Short* (1978), 60 Ill. App. 3d 640, 377 N.E.2d 389; *People v. Brown* (1976), 41 Ill. App. 3d 641, 354 N.E.2d 602.

■■ We do not believe the trial court abused its discretion in this case.

Defendant planned as early as September 1, 1977, to raise an insanity defense at trial, and he was granted a 60-day continuance on that date for time to prepare that defense. Trial did not commence until January 31, 1978, five months later. The defense had more than adequate time to have defendant examined and to advise the State of the psychiatrist it intended to call at trial. Yet, defendant waited until the middle of the trial, when the State was ready to close its case, to ask that a psychiatrist be allowed to examine him and to testify as to his sanity at the time of the crime. Granting such a request would have required the trial court to delay the trial to allow time for the defense psychiatrist to examine defendant and to prepare his testimony, and also to allow a State psychiatrist to consider the defense doctor's opinion and to prepare a rebuttal to it. Under the circumstances, we cannot hold the trial court abused its discretion in denying defendant's untimely request.

■■ Defendant's claim that a voluntary manslaughter instruction should have been given is also without merit.

> "Passion on the part of the slayer, no matter how violent will not relieve him from liability for murder unless it is engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation is not sufficient the crime is murder." (*People v. Matthews* (1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 18.)

In *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 45, our supreme court recognized only four situations where a voluntary manslaughter instruction is appropriate.

> "The only categories of serious provocation which have been recognized are: 'substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property.' " (*Crews*, 38 Ill. 2d 331, 335.)

In the instant case there is no evidence of substantial injury to the defendant or of his illegal arrest. Defendant was not married to the victim at the time of the murder, therefore, the theory of adultery with the offender's spouse could not be used to justify a manslaughter instruction.

■■ ■ Defendant claims there were harsh words exchanged between him and the victim immediately prior to the shooting, and suggests a manslaughter instruction could have been based on the grounds of mutual quarrel or combat. We do not agree.

> "It is the general rule that language, however aggravated, abusive, opprobrious, or indecent, is not sufficient provocation to reduce a killing committed with a deadly weapon from murder to manslaughter * * *.

> The term mutual combat has been defined as one into which

both parties enter willingly, or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms. 15 C.J.S. p. 358." (*People v. Matthews* (1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 18. See also *People v. Causey* (1978), 66 Ill. App. 3d 12, 15-16, 383 N.E.2d 234, 237.)

The overwhelming evidence in the case clearly established that the victim was fleeing from defendant at the time she was shot by him. The trial court did not err in rejecting defendant's tendered voluntary manslaughter instruction.

Defendant next contends he was substantially prejudiced by the prosecuting attorney's improper comments during closing argument. The comments to which defendant objected are as follows:

"But all the people that testified whether to their opinion or what he did there is no doubt that he was not intoxicated. The reason I say that all that testimony is a little bit misleading is that I believe the Judge will instruct you that an intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting intentionally. Now Ladies and Gentlemen, what does that mean? This means that the intoxication must be so severe, isn't able to formulate any intent, can't act intentionally, can't do anything, anything that requires intention, picking up this pen."

The prosecutor's statement of the intoxication defense was incorrect. When the defense of intoxication is raised, the question is not whether defendant had the physical dexterity or mental ability to perform such a simple task as picking up a pen, but whether the defendant's intoxication was so extreme as to render him incapable of possessing the mental state which is an element of the offense charged. Ill. Rev. Stat. 1977, ch. 38, par. 6—3(a).

However, the rule is well established that improper remarks by a prosecutor do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.) We are convinced that the prosecutor's remarks could not have been a material factor in defendant's conviction. The prosecutor's comment on the defense of intoxication, while inaccurate, was not reiterated or emphasized in the State's closing argument. Numerous witnesses testified that defendant was not intoxicated at the time of the murder, and the jury was given a proper intoxication instruction. It is inconceivable to us that the jury could have been substantially misled by the prosecutor's comment or that the jury could have based its conviction on that comment.

Finally, defendant contends he was denied a meaningful election between the old and new sentencing laws as a result of the trial court's

failure to advise him of the specific sentence it would impose under each law. This precise contention has been specifically rejected by this court. *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554; *People v. Wilfong* (1979), 72 Ill. App. 3d 268, 390 N.E.2d 934.

For the foregoing reasons, the judgment of the Circuit Court of Warren County is affirmed.

Affirmed.

STOUDER, P. J., and ALLOY, J., concur.