THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD BURKS, Defendant-Appellant.

First District (1st Division)    No. 80-0720

Opinion filed December 28, 1981.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and John A. Ouska, III, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Harold Burks was indicted on two counts of murder and one count of armed violence based upon the underlying felony of murder. After a bench trial defendant was convicted of armed violence and sentenced to a term of 7 years' imprisonment.

Defendant and the victim Barbara Oliver began living together in mid-October of 1978. On February 1, 1979, they lived in a three-bedroom apartment owned and occupied by John Ellis. Defendant returned to the apartment at 8 a.m. on February 1, 1979, after spending the night visiting his children, drinking with a woman with whom he had previously lived and playing cards with some friends. Oliver had spent the night at their apartment with John Ellis and Fred Staples, another of Ellis' tenants.

Oliver was watching television in the living room when defendant returned. She got up to let him into the apartment. Defendant testified that when he went into the bedroom he shared with Oliver, he found a man known to him as Luther lying on the bed. Defendant grabbed a butcher knife from under the mattress, woke Luther and escorted him out the back door of the apartment.

Defendant testified that he then put the knife on the bedroom dresser

and walked into the living room. He asked Oliver why she was not in the bedroom entertaining her company. Oliver went back to the bedroom with defendant and a fight began. After a time, Ellis and Staples heard "some bumping." Staples heard Oliver say "don't do that." Ellis then called the police.

Ellis testified that Oliver then received a phone call. He called for her, but when she did not respond Ellis told the caller to call back later and hung up the phone. Subsequently, Oliver and defendant came out of the bedroom to answer the phone call. Oliver walked into the living room with her hands crossed in front of her pressed against her stomach. Oliver and defendant returned to the bedroom after they learned that the caller had hung up. Ellis and Staples then heard more "bumping" sounds. Ellis then heard defendant and Oliver go into the bathroom.

The police arrived. They found Oliver had been stabbed and carried her out of the apartment on a stretcher. Oliver subsequently died from the wound. A 17-inch butcher knife covered with blood was found in the bathroom. Defendant identified it as the knife with which Oliver was stabbed. Defendant was subsequently taken into custody.

On February 2, 1979, defendant spoke to Assistant State's Attorney Sander Klapman. Defendant first told Klapman that after escorting Luther out of the apartment he called Oliver to the bedroom. He placed the knife on the dresser and began to beat, hit and push Oliver. He stated that Oliver was holding the knife in her left hand down at her left side and that she was stabbed in an upward motion.

Klapman learned from an investigator assigned to the case that the wound angled downward. Klapman confronted defendant with this discrepancy. Defendant then stated that Oliver was holding the knife up in the air with both hands and that she was stabbed in a downward motion.

At trial, defendant admitted stabbing Oliver but claimed that it was an accident. He testified that after he called Oliver back to the bedroom she began to shout at him and fight with him. He testified that when he tried to leave the room Oliver picked up the knife and said, "You ain't going no fuckin' where."

Defendant admitted that he hit Oliver, but testified he did so to make her drop the knife. When she refused to do so, defendant stated he began to struggle with her. He testified that he grabbed her hand, turned the knife away from him and pushed it down. It was then, defendant claimed, that Oliver was stabbed.

Defendant was charged with two counts of murder and one count of armed violence. The trial judge found defendant guilty only of armed violence. Defendant filed a post-trial motion for acquittal and discharge, alleging that because the trial judge made no finding as to the murder

counts defendant had been acquitted of murder. Furthermore, defendant argued that this acquittal of the murder charges precluded the trial judge from entering a finding of guilty as to the count in the indictment charging armed violence based upon the underlying felony of murder. The trial judge denied the motion, stating that the theory on which he had found defendant guilty of armed violence was that he used a weapon while committing the offense of voluntary manslaughter. The trial judge sentenced defendant to a term of 7 years' imprisonment.

Defendant appeals, contending that his conviction should be reversed because (1) the armed violence conviction is inconsistent with the implied finding of not guilty as to the two murder counts and (2) there was insufficient proof of voluntary manslaughter to sustain a conviction for armed violence.

Defendant argues that his conviction for armed violence be reversed because the fact that the trial court made no finding on the murder charges operates as an acquittal on the murder charges as well as on the voluntary manslaughter charges and therefore no felony exists upon which the armed violence conviction can be based.

■■ We agree that the trial court's failure to make a finding as to the murder charges amounts to an acquittal on those counts. (*People v. Potts* (1949), 403 Ill. 398, 86 N.E.2d 345.) However, we do not agree with defendant's contention that the trial court's failure to enter a finding as to the murder counts operates as an acquittal on voluntary manslaughter. It is well settled that the crime of voluntary manslaughter is embraced in the charge of murder and an accused may be convicted of voluntary manslaughter under an indictment for murder. (*People v. Pratt* (1970), 46 Ill. 2d 99, 262 N.E.2d 898.) The record reflects that the trial court clearly indicated later in the proceedings that it based its finding of defendant's guilt as to armed violence upon the underlying felony of voluntary manslaughter. Therefore, because the record clearly reflects that the trial court found defendant had committed the offense of voluntary manslaughter, we conclude that the trial court did not err in convicting defendant of armed violence. (*Cf. People v. Miles* (1981), 96 Ill. App. 3d 721, 422 N.E.2d 5, where the court held insufficient an information which stated elements of murder and charged in separate count by citing voluntary manslaughter statute as underlying offense for the commission of armed violence, but which failed to specify elements of voluntary manslaughter.) There is no claim that the indictment here was insufficient.

■■ The State urges that this case be remanded for resentencing because defendant was found guilty of both armed violence and voluntary manslaughter but was sentenced only for armed violence. The trial court entered a formal conviction on the armed violence charge. However, the court merely stated that it found defendant had committed voluntary

manslaughter and that such offense was the felony upon which the armed violence conviction was based. The State argues that a formal conviction and sentence should have been entered on the voluntary manslaughter finding because even though the offenses of armed violence and voluntary manslaughter arose from the same act, multiple convictions or impositions of concurrent sentences is not precluded where the offenses are not by definition lesser included offenses. The State relies upon *People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d 1281, and *People v. Best* (1981), 97 Ill. App. 3d 1083, 424 N.E.2d 29. These cases interpret *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, to allow convictions for both armed violence and for the underlying offense to stand where the offense upon which the armed violence is predicated is a felony by statutory definition when committed without possession or use of a dangerous weapon and defendant acts while armed with such a weapon. However, we do not read *People v. Haron* to allow convictions for both armed violence and for the underlying offense to stand where the convictions are based upon the same physical act. We adhere to the rule set forth in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, that multiple convictions and sentences based on the same physical act are improper and only the conviction for the more serious offense may stand. Because both defendant's conviction for armed violence and the finding that defendant had committed voluntary manslaughter were based on the same physical act, only a conviction for the more serious offense may stand. The trial court properly entered judgment and sentenced defendant for the offense of armed violence, and we decline to remand this case for entry of a formal conviction and sentence on voluntary manslaughter.

Defendant also argues that his conviction for armed violence, even if properly based upon the underlying felony of voluntary manslaughter, be reversed because the underlying felony of voluntary manslaughter was not proved beyond a reasonable doubt.

We note that a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U. S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

Voluntary manslaughter is an unjustified killing committed while under a sudden and intense passion resulting from serious provocation; serious provocation is conduct sufficient to excite an intense passion in a reasonable person. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2; *People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.) Illinois law is well settled that mutual quarrel or combat is sufficient to support a finding of serious

provocation. (*People v. Hudson* (1979), 71 Ill. App. 3d 504, 390 N.E.2d 5; *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871.) The term "mutual combat" has been defined as one into which the parties enter willingly or in which two persons, upon a sudden quarrel and in hot blood, mutually fight on equal terms. *People v. Hudson*; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 314 N.E.2d 15.

■■ The night before the stabbing defendant visited his children and was drinking with a woman with whom he formerly lived. Defendant had been out all night and upon arriving at the apartment the next morning he found a man lying in his bed. Defendant "escorted" the man out of the apartment while holding a butcher knife. Defendant asked Oliver to come back to the bedroom. Oliver was very angry with defendant for staying out all night with the woman he had formerly lived with. Defendant was angry with Oliver for allowing Luther to sleep in their bed. An argument erupted which escalated into a physical assault and ended with Oliver being stabbed with the butcher knife. We find that there was sufficient evidence to find that defendant had committed the offense of voluntary manslaughter. Therefore, defendant's armed violence conviction was properly based upon the underlying offense of voluntary manslaughter.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.