THE CHICAGO BOARD OF EDUCATION, Petitioner-Appellee, *v.* BONNIE
JEAN TERRILE, Respondent-Appellant.

First District (2nd Division)    No. 60970

Opinion filed March 22, 1977.

Kathy Hahn, of Chicago, for appellant.

Benito H. Smith, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

The instant appeal is from an order of the Circuit Court of Cook
County, Juvenile Division, entered May 16, 1974, after a hearing, finding
Bonnie Jean Terrile (hereinafter respondent), then 13 years and 9 months
of age, guilty of habitual truancy and committing her to the Chicago
Parental School.[1]

[1] The Board of Governors of State Colleges and Universities, pursuant to Ill. Rev. Stat.
1973, ch. 144, par. 1155 (effective July 18, 1973), established a parental or truant school at
Northeastern Illinois University. The Chicago Board of Education then discontinued
maintenance of the Chicago Parental School and, until mid-1975, used the Northeastern
Illinois Residential School as a parental or truant school for its habitual truants. In mid-1975,
State funding for maintenance of the Illinois Residential School was discontinued, and, as a
result, operation of said School ceased. *Chicago Board of Education v. Kouba* (1976), 41 Ill.
App. 3d 858, 354 N.E.2d 630.

Respondent raises four issues for our review: (1) whether respondent was denied due process of law by being committed to the parental school without an affirmative showing that commitment is the least restrictive viable means of providing respondent with a minimal level of education; (2) whether respondent was deprived of equal protection of law by being prosecuted, as a resident of Chicago, under a different statutory scheme than an alleged truant who resides outside the limits of Chicago, but within the boundaries of Cook County; (3) whether the terms "habitual truant" and "a fit person to be committed," as used in the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 34—117 *et seq.*, repealed by Public Act 79-365, §1, effective August 7, 1975) are unconstitutionally vague; and (4) whether evidence properly adduced at the adjudicatory hearing was legally sufficient to support beyond a reasonable doubt the finding that respondent is a fit person to be committed to the parental school.

Patricia Loughran, a truant (or attendance) officer of the Chicago Board of Education filed a petition on April 23, 1974 in the Circuit Court of Cook County, Juvenile Division, alleging that respondent was a habitual truant and praying that the court inquire into the matter and enter such orders as the court might deem fit and proper. The petition alleged that respondent was a minor child of compulsory school attendance age (under the provisions of Ill. Rev. Stat. 1973, ch. 122, pars. 26—1 through 26—11), namely 13 years and 9 months of age; that respondent had habitually, wilfully and without just cause absented herself from attendance at, and has been habitually truant from, the Graham School in which she is enrolled as a pupil, in that, on December 7, 1973, and on December 11, 1973, and on January 11, 1974, and on 48 other school days during the present and prior school year, she had absented herself from attendance at the said school; that respondent's father is unknown; that respondent currently resides with her mother at a specified street address in Chicago; and that respondent's mother does not consent to the commitment of respondent to the Chicago Parental School.

Prior to the adjudicatory hearings on the petition, respondent moved under Supreme Court Rule 215 (Ill. Rev. Stat. 1973, ch. 110A, par. 215) for a physical examination by an impartial medical expert appointed by the court. In support of said motion, respondent testified that her absences, totaling over 100 school days, were due to illness. Approximately two years before she had contracted a kidney ailment which required hospitalization. Since then she continued to suffer effects of the ailment, including vomiting and pains in her head, side, and stomach. She was taking medication and under the care of a physician, one Dr. Knapp. On cross-examination, respondent stated that a medical record reflecting her illness was given to the Graham School principal and notes explaining her absences were given to her teacher. Although most of the absences were

for approximately two days, one recent period of absence lasted three months. Respondent was not hospitalized during this lengthy period of absence; rather, she stayed at home and took medication.

The trial judge stated that before an impartial medical examination is ordered, a medical report should be obtained from Dr. Knapp. If the report corroborated respondent's testimony, the judge reasoned, and was not opposed by a medical report from petitioner, Dr. Knapp's report might control the case. Thus, there would be no need for an impartial examination. A continuance was granted respondent to obtain the report.

Respondent was unable to procure a definitive medical statement from Dr. Knapp. The trial judge reserved ruling on respondent's Rule 215 motion, and the cause proceeded to adjudicatory hearing on May 16, 1974.

Petitioner was the first witness called on behalf of the Board. She identified respondent in court and professed knowledge of respondent's attendance at school. The parties orally stipulated that respondent was absent 126 days between September 5, 1973, and the date of the hearing. During the course of her investigation, petitioner and the school nurse went to respondent's home on December 7, 1973. In the presence of respondent's mother, respondent explained her kidney and stomach problems. Papers were left to be filled out by Dr. Knapp regarding respondent's physical condition. These papers were never returned to school authorities. Petitioner returned to respondent's home the next month. Respondent then said she was under a doctor's care but would return to school. In a subsequent phone conversation, Dr. Knapp told the witness that he gave respondent a "complete workup," and that there was no reason why respondent should not be in school. To give respondent an incentive to attend school regularly, the school principal, on March 25, 1973, promoted respondent to the sixth grade and transferred her to the classroom of her choice. Respondent did not return to school after the transfer.

Norbert A. Hodanick, the Graham School principal, also testified for the Board. He discussed the attendance problem with respondent many times. He also made a home visit and requested a doctor's note detailing her medical problems. The note was never received. Respondent's promotion and transfer was her idea; she said she would attend school if the change was made. Her attendance did not improve subsequent to the change despite continuing efforts to help respondent.

On cross-examination, Hodanick stated that respondent was never referred to the doctor employed by the Board. Rather, she was referred to the school nurse. A home-bound teacher had not been assigned to respondent. Normally, when a doctor suggests that there is going to be a long illness, a form is completed and sent to the Board, which assigns such

a teacher. As school authorities did not receive a doctor's note, the procedure for assignment of a home-bound teacher for respondent was not initiated.

Respondent moved for a directed verdict at the close of the Board's case. After argument, the motion was denied. Thereafter, Arlene Terrile, respondent's mother, and respondent herself were called as witnesses for respondent.

Mrs. Terrile testified that she sought medical help for her daughter. The first doctor that examined respondent could not find a physical problem and suggested psychiatric help. But the witness did not know how to obtain such help. Three months later a second doctor, Dr. Knapp, treated respondent for her continuing medical problems. Hospital tests and X rays were taken of respondent. The doctor concluded that the difficulties probably stemmed from respondent's nerves; there was also the possibility of an ovarian cyst. Medication was prescribed. On cross-examination, Mrs. Terrile stated that Dr. Knapp did not return the school forms which she gave him. However, he did talk to school authorities on the phone and explained respondent's condition. Dr. Knapp did not recommend that respondent stay home from school.

Under examination by the court, the witness explained that respondent generally remained in her bedroom when home from school. At times she went outside, but she often returned with a stomach ache. Respondent also did a little babysitting for a neighbor. Assuming respondent did not attend Graham School, Mrs. Terrile did not have an alternate plan for her education.

Respondent testified that when she awakened in the morning, her head and side would hurt and she would be unable to go to school. Were it not for her illness, respondent stated she would attend school; but if she could not attend school, she would like a teacher to come to her home. She had never been referred to a physician or psychologist by the attendance officer or the principal.

At the close of all the evidence, respondent renewed her motion for an impartial medical examination. The motion was again taken under advisement. The record does not disclose a ruling on this motion.

. The trial judge made a finding of habitual truancy. He then asked the Board's counsel if the parental school had facilities for psychiatric examinations. Counsel responded there were personnel at the parental school to examine respondent medically and psychologically. The trial judge then ordered her commitment.

■■ The purpose of the compulsory school attendance law (Ill. Rev. Stat. 1973, ch. 122, pars. 26—1 through 26—11) is to assure that all children receive a minimum education. (*People v. Levisen* (1950), 404 Ill. 574, 90 N.E.2d 213.) Hence, the only legitimate interest of the State in a habitual

truant's commitment to a parental school is to provide the truant with a minimal level of education; punishment is clearly not a legitimate interest. (*In re Urbasek* (1967), 38 Ill. 2d 535, 232 N.E.2d 716.) However, the State may not pursue a governmental purpose, albeit legitimate and substantial, by means which abridge fundamental liberties more broadly than necessary. The purpose must be achieved by means of the least restrictive viable alternative. *Shelton v. Tucker* (1960), 364 U.S. 479, 5 L. Ed. 2d 231, 81 S. Ct. 247; *Dunn v. Blumstein* (1972), 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995.

■■ The doctrine of least restrictive alternative has been applied to proceedings for involuntary civil commitment to a mental institution in numerous cases. (See, *e.g., Welsh v. Likens* (D. Minn. 1974), 373 F. Supp. 487; *Lessard v. Schmidt* (E.D. Wisc. 1972), 349 F. Supp. 1078, *vacated and remanded on other grounds* (1974), 414 U.S. 473, 38 L. Ed. 2d 661, 94 S. Ct. 713; *Dixon v. Attorney General* (M.D. Pa. 1971), 325 F. Supp. 966; *Covington v. Harris* (D.C. Cir. 1969), 419 F. 2d 617; *Wyatt v. Anderholt* (5th Cir. 1974), 503 F. 2d 1305.) A few cases have applied the doctrine in the context of institutionalized juveniles. *In re Harris*, (Cook County Cir. Ct., Juv. Div., December 22, 1967), reported in 1 Juv. Ct. Dig. 9, 2 Crim. L. Rpts. 2412, involved a 17-year-old, deaf and mute minor who was declared a ward of the court by virtue of having been found a neglected minor. The Juvenile Court held his detention in the Arthur J. Audy home was in violation of the basic policy and purposes of the Illinois Juvenile Court Act, the requirements of 14th Amendment due process of law, and the 8th Amendment prohibition against cruel and unusual punishment. The Audy home had no facilities or personnel for treatment of the minor's problem. It was ordered that less restrictive arrangements be made to tutor the child. The school system was ordered to provide tutoring at home by a trained instructor, or, if private tutoring was not feasible, to arrange transportation for the minor to a public school which offered special classes for the deaf and mute. In *Morales v. Turman* (E.D. Texas 1974), 383 F. Supp. 53, which involved a class action brought by juveniles who had been adjudicated delinquent and involuntarily committed, the court went so far as to require the State to create alternatives to incarceration:

> "The State may not circumvent the constitution by simply refusing to create any alternatives to incarceration; it must act affirmatively to foster such alternatives as now exist only in rudimentary form (foster homes, supervised probation and parole), and to build new programs suited to the needs of the hundreds of children that do not need institutional care (e.g., group homes, halfway houses, day care programs, out-patient clinics, home placements with close supervision). The Constitution of the United States and the laws of

the State of Texas require no less of defendants." 383 F. Supp. 53, 125.

Commitment of a habitual truant to a parental school involves a substantial abridgment of personal liberties, including the freedoms of association, movement, and privacy. (See *Morales v. Turman.*) The laudable governmental purpose of education must be achieved by the means which least infringe upon these liberties.

. In the case at bar, the record is devoid of evidence that commitment is the least restrictive alternative. The Board failed to make a showing as to what alternatives to commitment were available, which of these alternatives were investigated, and why the investigated alternatives were not suitable to meet the needs of respondent. (See *Lessard v. Schmidt.*) There was evidence that respondent has significant medical and psychological problems. The school authorities were made aware of these problems. But respondent was never referred to either the Board's medical staff or psychological staff for an evaluation. Furthermore, except for the general representations made by the Board's counsel immediately prior to entry of the order of commitment, there is nothing in the record to show that the parental school has the facilities or personnel to meet respondent's educational needs.

■■ We do not go so far as to order the Board to create new alternatives to commitment for the education of habitual truants. However, to satisfy the constitutional doctrine of least restrictive alternative, the Board must make an affirmative showing that: (1) its existing less restrictive alternatives are not suitable to meet the particular needs of the habitual truant, and (2) confinement in a parental school is a suitable means to meet those needs. Here, the Board failed to prove either of the above propositions.

In view of our holding that the commitment was a denial of due process of law, it is unnecessary for us to deal with the other issues raised by respondent.

For the foregoing reasons, the dispositional order of May 16, 1974, is hereby reversed.

Reversed.

DOWNING, P. J., and PERLIN*, J., concur.

---

* At the time of oral argument of this case Justice John C. Hayes sat with Justices Downing and Stamos. Subsequently Justice Hayes died. Since that time Justice Perlin was designated the third member of the panel and has listened to the tape of the oral argument, has read the brief and excerpts from the record.