*In re* C. O., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* C. O., Respondent-Appellant.)

Second District No. 78-436

Opinion filed June 27, 1979.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

C. O., the respondent minor, appeals from a dispositional order of May 18, 1978, committing him to the custody of the Department of Corrections.

On October 31, 1973, respondent, then 11 years old, was found to be a neglected child and made a ward of the court. On May 13, 1976, after having been found to have committed the offense of theft, he was declared to be delinquent and again adjudged a ward of the court. On September 16, 1976, he admitted the offense of criminal damage to

property and on January 27, 1977, he admitted the offense of resisting a peace officer. On January 12, 1978, he admitted the offense of criminal trespass to a motor vehicle, was again found to be delinquent, and was committed to the custody of the Department of Corrections for a 30-day diagnostic program. On March 17, 1978, the juvenile court again found the minor to be delinquent, he having again committed the offense of criminal trespass to a motor vehicle. He was placed in the temporary custody of the Lake County Youth Home pending dispositional hearing, which was set for April 18, 1978. On April 18, 1978, the court ruled that the respondent minor should continue at a foster home under the supervision of the Department of Children and Family Services subject to certain conditions and continued the matter until May 11 for review. On May 11, the minor having fled to Kentucky, a juvenile warrant was issued for his arrest. He was arrested and detained but escaped from custody. Another warrant was issued and he was again arrested. On May 18, 1978, after a lengthy hearing, the minor was committed to the custody of the Department of Corrections. On May 23 the minor was picked up after fleeing again.

Respondent raises two issues on appeal, contending (1) that he was denied certain due process procedural rights, and (2) that an alternative to the Department of Corrections should have been utilized.

Resolution of the first issue is dependent upon what interpretation we place on the trial court's order of April 18, 1978, which includes, *inter alia*, the following:

"* * * the minor shall continue in placement at the Zervos foster home under the supervision of the Department of Children & Family Services subject to the following conditions:

1. The minor shall continue counseling with the Family Services of North Lake County.

2. The minor shall continue training and employment with Mr. Zervos.

3. The minor shall cooperate with the Department of Children & Family Services and UDIS in any program deemed necessary.

4. The minor shall attend Alternative School if minor chooses to work on a part time basis.

THE COURT FURTHER ORDERS that this manner is continued to May 11, 1978, at 9:30 a.m. for review."

Respondent contends that this order was a final placement pursuant to section 5—2 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—1 *et seq.*). More specifically, he claims that this order represents either placement under subsection 1(a)(1) (probation or conditional discharge) of section 5—2 or subsection 1(a)(4) (commitment to the Department of Children and Family Services) of the same section. The

State disagrees, contending that the order in question did not represent a final or permanent disposition of custody pursuant to any subsection of section 5—2, but was merely a continuance permitted by section 5—1(4) of the Juvenile Court Act, which provides that:

"\* \* \* the court may adjourn the hearing for a reasonable period to receive reports or other evidence and, in such event, shall make an appropriate order for detention of the minor or his release from detention subject to supervision by the court during the period of the continuance."

The nature of the April 18 order is critical because a grant of probation and conditional discharge pursuant to section 5—2(1)(a)(1), and arguably, a commitment to the Department of Children and Family Services pursuant to section 5—2(1)(a)(4) brings into play the section of the Juvenile Court Act specifically regulating the revocation of probation or conditional discharge, section 5—3. There is no question that section 5—3 was not complied with in the instant case but, if the April 18 order should be characterized as a continuance, section 5—3 is not applicable. ■■ An examination of the record convinces us that the trial court's order of April 18 was not a final disposition but was, as the State contends, a 23-day continuance pursuant to section 5—1(4) to receive reports or other evidence.

At the April 18 hearing it was suggested that the minor could take part in a program formulated by the United Delinquency Intervention Service (UDIS). C. O. was the first minor in Lake County to be referred to this particular program. The State, the Department of Children and Family Services, and the public defenders all concurred with this suggestion, the public defender adding:

"However, as far as a review date is concerned, I would suggest that it be a short date. This particular case, as your Honor is aware of, we have had difficulties with in the past, I think it is felt by everyone included that a very close track be kept of it, and I would suggest no longer than a month from now."

The State's Attorney commented that:

"The State originally recommended that the minor be referred to UDIS, and at this time the State is not going to change that recommendation *since in fact the plan that UDIS has proposed has not yet been put into effect.*

So, it is the State's position that we should give UDIS a chance to work it out." (Emphasis added.)

The trial court concurred with these recommendations:

"THE COURT: I'm going to set it for review as indicated, on May 11, which is a Thursday, here at 9:30 without further notice.

There should be an update provided to me at that time so that I can determine whether there is some success or not as to the aspects that are provided for here."

The above comments indicate a clear intention on the part of the trial court to continue the case for a short time rather than to make any final disposition. This does not mean that a juvenile court has the right to use section 5—1(4) as a means of indefinitely avoiding the making of a final disposition. The UDIS program was new in Lake County and had not yet fully gone into effect and the minor in question had been before the court a number of times without noticeable improvement in behavior. These factors justified the trial court's decision to continue the proceedings until May 11.

We are not unmindful of our recent decision in *In re R.R.* (1978), 64 Ill. App. 3d 818, 381 N.E.2d 1187, reversing a commitment to the Department of Corrections on the basis of due process violations. *In re R. R.* is distinguishable, however, in that it involved a commitment clearly based on a revocation of probation.

Since we have held that section 5—2 does not apply, it is not necessary to rule on respondent's contention that subsection (4) of that section, as well as subsection (1), triggers the operation of section 5—3, and we will not do so.

■■ Respondent's second contention is that the juvenile court abused its discretion in committing him to the Department of Corrections in the face of evidence that the circumstances called for placement in a less restrictive alternative. In support of this contention respondent emphasizes the fact that several months prior to the order appealed from, the Department of Corrections, after a 30-day diagnostic examination, concluded that he was not an appropriate candidate for commitment to that Department. This argument is totally without merit. First, the report relied upon, although only a few months old, was out of date in view of respondent's subsequent delinquent behavior. Second, the trial court judge is not bound to accept such a recommendation from the Department of Corrections, particularly when there is no realistic alternative. In the instant case there does not seem to be any such alternative. As the trial court told respondent,

"The system itself has afforded you certain and definite alternatives, such as the Soar Camping Program * * *; Operation Breakthrough * * *; the UDIS Program; a day treatment program; Youth Advocacy Program.
* * *

It is the considered opinion of this Court that there is not any reasonable alternative other than hopefully providing you some

opportunities to develop alternatives to the unlawful behavior in a manner that contains you within architectural restraints."

A similar argument was made in *In re Wilson* (1976), 40 Ill. App. 3d 619, 622, 352 N.E.2d 251, 254. We concur in the following statement of the court therein.

"Both probation and the UDIS program were suggested to the court, and we find no provision in the Act requiring a dispositional alternative other than commitment. To the contrary, section 5—2 of the Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—2) provides the types of dispositional orders that may be entered, and it does not defer one to another. Furthermore, the Act gives the court a great deal of discretion regarding the conduct of a dispositional hearing. [Citation.]"

For the foregoing reasons, the dispositional order of the trial court committing the respondent to the Department of Corrections is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.