THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DARNELL HAMILTON, Defendant-Appellant.

First District (2nd Division)    No. 78-1205

Opinion filed January 29, 1980.

Ralph Ruebner, Gordon Berry, and Mike Mulder, all of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Paula M. Daleo, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Darnell Hamilton, was found guilty of deviate sexual assault and attempted rape, for which he was sentenced to concurrent terms of 6 to 10 years and 4 to 12 years, respectively, in the Department of Corrections. On appeal, defendant argues: (1) that his transfer from juvenile court to criminal court under section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7) was unconstitutional because the statute violates due process; (2) that he was denied due process at the transfer hearing on the issue of custodial psychotherapeutic treatment in the Department of Mental Health as an alternative to prosecution; (3) that the trial court erred in barring evidence that defendant had a distinctive scar that was not mentioned by the complaining witness; (4) that the court erred in

permitting the prosecution to use a blackboard to aid the witnesses in illustrating their testimony; (5) that the prosecution's closing argument was improper; (6) that defendant should have been committed to the juvenile rather than adult division of the Department of Corrections; and (7) that defendant was not adequately apprised of the consequences of his election between the old and new sentencing codes.

On August 27, 1976, defendant was arrested for allegedly raping, sexually assaulting, and committing indecent liberties with a child, the 13-year-old victim. At the time of the occurrence defendant was 16 years old. The court held a hearing on the issue of probable cause and on the State's section 2—7 motion (see Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)) to permit prosecution of defendant under the criminal laws. The court heard testimony by a police investigator that defendant accosted the victim at knife point and forced her through an alley into an abandoned building. He attempted to have intercourse with her and then forced her to undergo anal intercourse. Later that day the victim identified defendant at the police station. The witness also testified that defendant was involved in another incident, the day before the occurrence at bar, in which he knocked a woman to the ground and attempted to drag her into an alley, but the woman broke away. She, too, identified defendant. The court made a finding of probable cause on all counts.

The trial court then called defendant's probation officer, Ernest Jones, to testify. Jones stated that he had a master's degree in counselling psychology based on 60 to 66 hours of psychology courses. He had known defendant for one month. He stated that defendant seemed deeply concerned over the outcome of the delinquency petitions. Defendant came from a good family, was one of nine children, and had been living in Chicago for one year. Defendant was of average intelligence, but his high school records were not available.

Defendant's first involvement with the juvenile court was the filing of two delinquency petitions against him on August 3, 1976. One alleged that defendant had attempted to rape an elderly woman at knife point. (Defendant's conviction arising from this incident was recently affirmed in *People v. Hamilton* (1979), 78 Ill. App. 3d 1031, 398 N.E.2d 33.) The second petition alleged that defendant committed battery by attempting to unzip a woman's slacks and unhook her bra, also at knife point. The court in those proceedings found probable cause but denied the State's section 2—7 motion to transfer. The petitions were placed on the juvenile calendar and defendant was released. Eight days later defendant allegedly committed the instant offenses.

Jones testified that it had been his recommendation at the last hearing, and still was his recommendation, that defendant not be transferred to the criminal court. Instead, he urged that defendant be

referred to the Department of Mental Health "[b]ecause I believe that the Minor Respondent has not had the full facility of the Juvenile Court. The Juvenile Court has done nothing." Jones said he did "not believe that the adult jurisdiction would do anything for the Minor," and that defendant "should be kept in the jurisdiction of the Department of Corrections, Juvenile Division." He then opined that the court had the authority to commit a minor to the Department of Mental Health. Jones was not familiar with the facilities of the Department of Corrections available to a minor committed from the criminal court, nor was he aware that the facilities were the same as those available to a minor committed from juvenile court, nor that the Department of Corrections could make a referral to the Department of Mental Health from either the juvenile or adult court. He stated that his opinion would not change even if the Department of Corrections could refer a case to the Department of Mental Health after commitment by the adult court.

Probation Officer Jones further testified that, assuming the petitions before the court were true, defendant was a dangerous person, and rehabilitation might or might not be long-term. He felt defendant could be rehabilitated in the juvenile division of the Department of Corrections, and parole or supervision would depend on what happened during the period of incarceration. He did not believe it would be in the best interest of defendant or society to place defendant on probation, and he did not feel the UDIS (United Delinquency Intervention Service) program would be beneficial. When asked if some type of incarceration was needed in any event, he said, "I didn't say incarceration. I said Department of Mental Health * * * a therapeutic setting." He believed that the Department had various degrees of security available, minimum to maximum, and he had one juvenile who had been committed to the Department of Mental Health. Jones stated that he would prefer the Department of Mental Health, rather than the juvenile division of the Department of Corrections, because defendant was in need of psychiatric help. He testified that he was familiar with a report by Dr. Cohen dated August 5, 1976, approximately 5 weeks before the instant proceeding. Dr. Cohen also felt defendant needed psychiatric help.

The witness testified that a transfer to the adult jurisdiction would not be beneficial to defendant, but he could not say it would be harmful because he was only familiar with the juvenile and not the adult division. He believed defendant could possibly be rehabilitated within 5 years, and therefore while still within the jurisdiction of the juvenile court. If defendant was committed to the juvenile division of the Department of Corrections, he would need therapeutic help immediately. He did not suspect that defendant needed psychological help when he had earlier recommended his release from custody. When asked if he was aware of

anything unique to the juvenile court system and not available to the adult court system, the witness stated that he could not make a comparison because he did not know what was available in the adult system.

The court then asked Jones about Dr. Cohen's report, noting that a therapeutic approach was recommended but that it was ambiguous whether the doctor meant simply that defendant was dangerous or that he did things unknowingly. After remarking that he did not know what the doctor meant, the court stated, "This is the first time I recall that a situation like this has come up." The court elicited that Dr. Cohen was not aware of the offenses before the court at the instant transfer hearing, and stated that the report was incomplete.

The court then heard argument, the prosecutor contending that the court did not have the power to commit defendant to the Department of Mental Health. The public defender said he did not know if the court could make such a transfer, and argued that Jones's testimony indicated he preferred that defendant be committed to the juvenile division of the Department of Corrections over the adult division. The court then stated that it "is constrained to do anything but [*sic*] sustain each of the State's motions to transfer this Minor for prosecution under the adult criminal laws."

At trial, the court sustained a motion for a directed verdict as to the indecent liberties count, and the jury returned a verdict finding defendant guilty of deviate sexual assault and attempted rape. The testimony and events at trial will be discussed as pertinent to the issues raised on appeal.

■■ Defendant first contends that his transfer from the juvenile court to the adult criminal court under section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)), was unconstitutional because the statute violates due process. Section 2—7(3) provides in pertinent part:

"If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters:

(1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is

evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. The rules of evidence shall be the same as under Section 5—1 of this Act."

Defendant argues that the statute denies juveniles due process in that (1) the statute does not articulate a standard of proof; (2) the relaxed rules of evidence applied at dispositional hearings are prescribed; (3) the court is not required to weigh the specified criteria according to a set formula, select the least restrictive alternative, or state the reasons for ordering the transfer; and (4) the statute does not provide for immediate appeal from a transfer order. These arguments are, for the most part, identical to those raised and recently rejected by our supreme court in *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, upholding the constitutionality of the statute. Defendant here more specifically argues that the State should not be permitted, as it was in the instant case, to use hearsay to establish that the offense charged was committed in an aggressive and premeditated manner. We note defendant did not object to the use of hearsay in this fashion. Moreover, while *Taylor* did refer to the necessity of admitting "social records containing hearsay" (76 Ill. 2d 289, 304), it also emphasized that a transfer hearing is not adjudicatory and does not determine guilt or innocence, but is rather dispositional in nature, determining only the forum in which guilt or innocence will be adjudicated. (76 Ill. 2d 289, 302.) The court went on to state: "The use of documentary *or testimonial* evidence of a reliable nature, even though hearsay, constitutes a much less time-consuming method of proof very nearly essential to this type of hearing. Its use in that context is not, in our judgment, constitutionally impermissible." (Emphasis added.) (76 Ill. 2d 289, 305.) Reliable hearsay evidence is accordingly admissible to establish the nature of the alleged offense, as it is to establish the other statutory factors. See *State v. Piche* (1968), 74 Wash.2d 9, 442 P.2d 632, *cert. denied* (1969), 393 U.S. 1041, 21 L. Ed. 2d 588, 89 S. Ct. 666 (permitting hearsay by police officers to establish the offense), cited with approval in 76 Ill. 2d 289, 302-03; *People v. Diaz* (1979), 75 Ill. App. 3d 387, 394 N.E.2d 465.

■■ ■ In view of the ruling in *Taylor* upholding the constitutionality of section 2—7(3), defendant's argument as to the statute's failure to embody the doctrine of the least restrictive alternative is best considered in the context of defendant's second principal contention, that the court failed to consider the less restrictive alternative of transfer to the Department of

Mental Health and/or custodial psychotherapy. First we will examine the court's exercise of discretion to permit prosecution under the criminal laws in the light of the six factors enumerated in section 2—7(3)(a) of the Juvenile Court Act, set out above, and the facts before the court. There is no question that there was sufficient evidence upon which a grand jury could return an indictment and which would indicate that the alleged offenses of attempted rape and deviate sexual assault were committed in an aggressive and premeditated manner. As to the history of the 16-year-old minor, he allegedly had committed three other attacks, all within a period of 1½ months. The probation officer felt defendant was dangerous, assuming the petitions were true, and could recommend neither probation nor the UDIS program. Detention in some secure facility was indicated in any case. While his opinion was that defendant should not be transferred to the criminal courts, Jones also stated that the juvenile court had done nothing for defendant. He could not cite any facilities particularly available to the juvenile court for the treatment and rehabilitation of defendant, owing to his lack of knowledge of the adult facilities available. For the same reason, he could not say whether transfer would be harmful. Finally, he stated that in his opinion it would probably not take 5 years for the Department of Mental Health to alleviate defendant's behavior, but it was possible it could take longer. Based upon this testimony, we believe the juvenile court was well within its discretion in transferring defendant to the criminal courts, nor do we believe that the fact that the court stated it felt "constrained" to grant the State's motion indicates the court did not exercise its discretion.

Next we consider the "least restrictive alternative" of transfer to the Department of Mental Health defendant argues should have been considered and followed in the court below. We do not believe it was a viable alternative. Once a delinquency petition had been filed (Ill. Rev. Stat. 1975, ch. 37, par. 704—1), the court was compelled to conduct an adjudicatory hearing within the juvenile system (Ill. Rev. Stat. 1975, ch. 37, par. 704—2) or, upon motion of the State, enter an order permitting prosecution under the criminal laws. (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3).) We cannot agree the court here could simply commit defendant to the Department of Mental Health without any adjudication of his guilt or innocence, despite his need of psychiatric help. (*Cf. People v. Lang* (1979), 76 Ill. 2d 311, 391 N.E.2d 350.) Moreover, the record discloses defendant was found fit to stand trial. Having once been convicted or declared delinquent and adjudged a ward of the court, and, as is likely, having been committed to the Department of Corrections, defendant could be transferred to the Department of Mental Health from either the adult or juvenile divisions of the Department of Corrections, as sections 3—8—5 and 3—10—5 of the Unified Code of Corrections

respectively make clear. (Ill. Rev. Stat. 1975, ch. 38, pars. 1003—8—5 and 1003—10—5.) If defendant was not adjudicated delinquent or found guilty, he, through his parent, would have been able to petition for admission as a mental patient. (See section 5—2 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 5—2), which provided for such admission of a person under 18 years of age upon application "by a parent, guardian, or person in loco parentis, the Department of Corrections or Department of Children and Family Services.") However, we note that this and the entire Mental Health Code were repealed and replaced effective January 1, 1979, by the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 1—100 *et seq.*; compare Ill. Rev. Stat., 1978 Supp., ch. 91½, pars. 3—401 and 3—502 (permitting voluntary admission of persons 16 years of age or older on their own application)). If the juvenile court retained jurisdiction and, after adjudicating defendant as a delinquent, chose not to commit him to the Department of Corrections, under section 7—3 of the Juvenile Court Act, the court would nevertheless be empowered to refer defendant to "a public hospital, institution or agency" including, presumably, one maintained by the Department of Mental Health. (Ill. Rev. Stat. 1975, ch. 37, par. 707—3.) In the alternative, the court could procure psychiatric help for defendant through the Court Services Department provided for in section 6—3 of the Act. (See Ill. Rev. Stat. 1977, ch. 37, par. 706—3(3).) But there is nothing to indicate that direct referral to the Department of Mental Health is a possible alternative to adjudication as a juvenile or prosecution as an adult. Accordingly, defendant's argument that he was denied due process by the court's failure to consider this "alternative" is without merit.

■■ During oral argument, counsel for defendant backed off from this position, conceding that an adjudication of some kind would be necessary. Nevertheless, he argued that defendant was denied due process because defendant's need for psychiatric treatment, along with the probation officer's recommendation of treatment in the juvenile division of the Department of Corrections and/or the Department of Mental Health, were not fully considered. He also pointed out that section 6—3 of the Juvenile Court Act, specifically providing for psychiatric clinical services, was not brought to the attention of the court as a "facilit[y] particularly available to the Juvenile Court for the treatment and rehabilitation of the minor," one of the statutory criteria to be considered by the transfer court. (Ill. Rev. Stat. 1975, ch. 37, par. 702— 7(3)(a)(5).) We note that section 6—3 goes on to read that the Court Services Department "may be required by the circuit court to render psychiatric clinical services to the court in other matters as well as in proceedings under this Act" (Ill. Rev. Stat. 1975, ch. 37, par. 706—3), thus

leaving open the possibility of psychiatric care under the section even for minors transferred to the criminal court. Be that as it may, the trial court was not bound to base its decision solely on defendant's psychiatric needs nor to follow the probation officer's somewhat sketchy and confused recommendations. (*Cf. In re C.O.* (1979), 73 Ill. App. 3d 369, 372, 391 N.E.2d 1075 (trial court is not bound to accept recommendations in making dispositional orders, particularly when there is no realistic alternative).) The court was apprised of defendant's need for psychiatric help, yet did not find it controlling in light of the other testimony going to the six statutory criteria. While the court would have done well to specify its reasons for the transfer, the record reveals sufficient facts to support the court's exercise of discretion. See generally *People v. Taylor* (1979), 76 Ill. 2d 289, 300-01, 391 N.E.2d 366.

We find nothing in *Chicago Board of Education v.. Terrile* (1977) 47 Ill. App. 3d 75, 361 N.E.2d 778, or *In re Burns* (1978), 67 Ill. App. 3d 361, 385 N.E.2d 22, cited by defendant, to the contrary. In *Terrile*, this court found that the State had failed to employ the least restrictive alternative in committing a truant girl to a parental school without attempting to evaluate her medical or psychological problems and needs. In *Burns*, the court held that the juvenile court did not abuse its discretion in deciding a minor should remain under the jurisdiction of the juvenile court and *not* be prosecuted as an adult. The minor's need for treatment of her psychiatric problems was one consideration held to be relevant to this decision. With this we agree, but once again, we cannot hold that the need for psychiatric treatment is the only factor to be considered. Defendant's case is otherwise far different from those of the minors in *Burns* and *Terrile*. We conclude that the trial court's decision to permit prosecution of defendant as an adult, considering all the factors enumerated in the statute, was well within the court's discretion, and that the least restrictive alternative doctrine was not applicable.

The next issue concerns the court's failure to permit defendant to offer proof of an alleged scar on his arm. During cross-examination of the complaining witness, after it had already been established that defendant was wearing a sleeveless shirt or sweater, the victim testified that she had not mentioned seeing any scars her assailant might have had on his body. Examination of the complainant continued for the rest of the day. On the next court date, following some proceedings outside the presence of the jury and a recess, defendant entered the courtroom carrying his outer shirt and wearing a "tank top" undershirt. The court told defendant this was improper and directed him to put his shirt on. Defense counsel then pointed out that the assailant had worn a sleeveless garment and defendant had a distinctive scar on his arm which was not mentioned by the complainant. The court refused to allow defendant to display the scar

to the jury. Defendant's attorney offered to prove the scar ran two or three inches down defendant's arm, was about a quarter of an inch in width, had a darker coloration than defendant's skin and was raised. Defense counsel then offered to call a member of defendant's family to testify that he had had the scar for years prior to the alleged offense, but because the witness had been in court during the complainant's testimony and while an exclusion order was in effect, the court declined to let the witness testify.

■■ Defendant contends the court erred in not permitting him to display his scar to the jury. We agree. Innumerable cases have held that an identification witness' failure to mention a distinctive physical characteristic, while not fatal, is admissible as going to the weight to be given the identification testimony. (*E.g., People v. Hunt* (1975), 34 Ill. App. 3d 472, 340 N.E.2d 203; see *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 616-17, 378 N.E.2d 1318, and cases cited therein.) Without citing any cases, the State contends that defendant sought to prove the scar improperly and/or should have taken the stand, but we find no merit in either of these contentions.

Nevertheless, we find that the court's error was harmless in view of the overwhelming evidence of defendant's guilt. The victim had ample opportunity to view defendant both before and during the occurrence. She gave accurate descriptions of his person and his clothes to different police officers immediately after the incident, leading directly to defendant's apprehension. The facts of the attempted rape and deviate sexual assault were corroborated by a doctor's testimony and by the victim's prompt complaint. Finally, another witness who recognized defendant saw defendant holding the victim's arm and walking her into an alley. In the face of this evidence, the court's error was harmless beyond a reasonable doubt and does not require reversal.

■■ ■ Defendant next argues that the court erred in allowing the prosecution to use a blackboard to assist the witnesses in illustrating their testimony. Use of a blackboard as a visual means of expression is undeniably proper as a general proposition. (*E.g., People v. Fisher* (1930), 340 Ill. 216, 241, 172 N.E. 743.) In the case at bar, the prosecution first used the blackboard in examining the officers to whom the victim related her story and with whom she retraced the route she was taken by her assailant. Over objection, the witnesses marked the route on the blackboard. Apparently without the board having been erased, the victim traced her route on the blackboard in more detail, marking each point in her journey where anything occurred. At one point she even corrected the placement of an alley on the diagram. Although it would have been better if the witnesses' markings on the board had been erased between witnesses, we find no merit in defendant's claim that the board

constituted a device for "mutual coaching" among the witnesses or that use of the board otherwise prejudiced defendant.

■■ Defendant next argues that the following portion of the prosecution's closing argument was improper and mandates reversal:

> "The State had the burden of proof. Counsel made a big issue of that. Let me say something. The Assistant State's Attorneys trying this case, in every case, those who have ever tried a single criminal case in every State of the Union, have that burden. It is not an impossible burden. Every criminal convicted by a Judge or jury has the presumption of innocence. It goes with them right until the jury says guilty, and that burden has been met in every case throughout the nation. So it is not an impossible burden."

We agree that it was improper to state that the burden of proof had been met in every prosecution throughout the nation, and the fact that the defense made a burden of proof argument was not an invitation to such a misstatement. However, in view of defendant's failure to object, such error would not require reversal unless it was plainly a material factor in defendant's conviction or resulted in substantial prejudice to defendant's right to a fair trial. (*E.g., People v. Brown* (1974), 20 Ill. App. 3d 1064, 313 N.E.2d 488.) In view of the overwhelming evidence against defendant, we do not believe the statement contributed to defendant's conviction.

■■ Defendant next argues that he should have been sentenced to the juvenile rather than adult division of the Department of Corrections, since he was under 17 years of age at the time of the offense. Section 5—8—6(c) of the Unified Corrections Code (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—6(c)) provides: "All offenders under 17 years of age sentenced to imprisonment shall be committed to the Juvenile Division of the Department of Corrections * * *." In *People v. Taylor* (1979), 76 Ill. 2d 289, 310, 391 N.E.2d 366, our supreme court rejected defendant's construction and held that the offender's age when sentenced is the relevant criterion. Because defendant was 17 when sentenced, he was properly committed to the adult division.

Finally, defendant contends the cause should be remanded for further sentencing proceedings. Since defendant's sentencing hearing took place after the effective date of Public Act 80-1099 (February 1, 1978), which established the new scheme of determinate sentencing, defendant had the right to elect to be sentenced under the law as in effect at the time of his offense or at the time of his sentencing. See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b); see also Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—3—2.1.

■■ At the sentencing hearing, the court asked whether defendant's counsel had discussed with defendant which sentencing act he wished to be sentenced under. Defendant's counsel said defendant elected to

proceed under the old sentencing code. The court asked defendant's attorney if he was satisfied that the defendant understood the consequences of his election, and counsel responded that he had explained that the old code provided for a spread sentence as opposed to the new determinative sentencing. Counsel also stated that defendant understood that under the new Class X sentencing laws, a life sentence could be given to repeat offenders. Twice defense counsel said he thought it was to defendant's benefit to be sentenced under the old code. Reference was also made to a later "option to choose." It is this vague reference to defendant's right to elect a fixed release date about which defendant complains, contending that the statutory provision should have been explained to him in greater detail. (See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—3—2.1.) However, it has been held that it is the duty of counsel, not the court, to explain the election and suggest the better course. (See *People v. Edwards* (1979), 76 Ill. App. 3d 228, 394 N.E.2d 1391; *People v. Wilfong* (1979), 72 Ill. App. 3d 268, 273-74, 390 N.E.2d 934; *People v. Peoples* (1979), 71 Ill. App. 3d 842, 846, 390 N.E.2d 554; *People v. Puckett* (1979), 70 Ill. App. 3d 743, 748, 388 N.E.2d 1293; *People v. Warfel* (1979), 67 Ill. App. 3d 620, 627, 385 N.E.2d 175.) We agree it is not always obvious which is more beneficial, and we would remand for resentencing if defendant had not been permitted to elect. (See *People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514.) Here the court determined defendant was informed of his right to elect and that his counsel had explained and advised what appeared to be the better course. No more was required, and defendant's claim of prejudice is speculative in any event.

Accordingly, defendant's conviction and sentence is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.